[No. C016864. Third Dist. Jan. 21, 1997.]

DONNA M. PLUNKETT, Plaintiff and Appellant, v.
JOSEPH T. SPAULDING, Defendant and Respondent.

**COUNSEL**

Murphy, Pearson, Bradley & Feeney and Mark E. Ellis for Plaintiff and Appellant.

Charles Bond, Craddick, Candland & Conti and Marrs A. Craddick for Defendant and Respondent.

---

## OPINION

**SCOTLAND, J.**—This appeal poses the question whether a party who intends to call a treating physician to testify at trial not only as to the physician's treatment of a patient, but also to give an expert opinion on the standard of care that another physician should have employed when treating the patient, must provide an expert witness declaration during discovery. (Code Civ. Proc., § 2034, subds. (a)(2) & (f)(2); further section references are to the Code of Civil Procedure unless otherwise specified.)

Donna M. Plunkett (plaintiff) designated two of her treating physicians as persons whose expert opinion testimony she expected to offer in evidence in this medical malpractice action. (§ 2034, subd. (a)(1).) At trial, she sought to elicit their testimony not only regarding their treatment of her, including diagnosis and prognosis, but also concerning their expert opinions on the standard of care that Dr. Joseph T. Spaulding (defendant) should have used when he treated plaintiff. The court sustained defendant's objection to the latter testimony on the ground that plaintiff had not provided defendant with expert witness declarations which are required for any designated expert who "has been retained by any party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action[.]" (§ 2034, subds. (a)(2) & (f)(2).) The court then denied plaintiff's motion to submit a tardy expert witness declaration setting forth expected standard of care testimony by one of her treating physicians. (§ 2034, subd. (*l*).)

On appeal, plaintiff contends expert witness declarations were not required for these witnesses, even if she intended to elicit standard of care testimony from them, because they were not " 'retained' by [her], meaning hired and then paid a fee in return for providing an opinion as an expert witness. [They] were simply physicians who were currently treating [her]." We disagree.

As we shall explain, expert witness declarations would not have been required if the treating physicians were expected to testify only as to their treatment of plaintiff, including diagnosis and prognosis. However, when in addition to this testimony they were asked to provide expert opinions on the standard of care that defendant should have used in treating plaintiff, they became experts "retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial

of the action[.]" (§ 2034, subd. (a)(2).) That plaintiff did not pay a monetary retainer to her treating physicians for this testimony is immaterial. Applying an ordinary, commonsense meaning of the statutory language in a manner consistent with its evident purpose, we conclude section 2034, subdivision (a)(2) applies to either a paid or unpaid agreement to express an expert opinion on the standard of care that should have been employed by another physician.

Consequently, the trial court correctly held that plaintiff was required to provide expert witness declarations concerning her treating physicians' expected standard of care testimony and that her failure to do so was a basis to exclude said testimony. (§ 2034, subd. (j).)

We conclude, however, the court erred in ruling on plaintiff's motion to submit a tardy expert witness declaration for one of her treating physicians. Because the court did not consider and apply all of the factors which the statute requires to be taken into account, it abused its discretion in denying the motion. Finding the error prejudicial, we shall reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was diagnosed with cervical cancer. Defendant, a surgeon and urologist, was employed by plaintiff to diagnose and treat her cancer. He performed surgery, during which plaintiff's uterus, bladder and other surrounding tissues were removed.

Following the surgery, plaintiff learned from another physician that the cancer had spread to some adjacent lymph nodes. Radiation to treat the cancerous lymph nodes was administered by Dr. Lanceford M. Chong, a radiologist. Thereafter, plaintiff was treated by Dr. Kimberly Fillmore, an obstetrician/gynecologist.

Plaintiff sued defendant, and other doctors who are not parties to this appeal, for medical malpractice. The complaint alleges defendant "failed to conform to the applicable standard of care in treating [plaintiff] and failed to properly diagnose and treat her cervical cancer condition," which resulted in the unnecessary removal of her bladder and the spread of cancer in her lymph nodes. The complaint further alleges defendant failed to properly disclose all the material information, including information concerning "radiation treatment, or other alternative treatments," necessary to enable plaintiff to make an informed decision regarding medical intervention. According to the complaint, if plaintiff had been informed properly, she would have pursued treatment earlier, and would have elected treatment different from, or additional to, the surgery performed by defendant.

Plaintiff timely gave defendant information concerning witnesses from whom she expected to elicit expert testimony at trial. (§ 2034, subd. (a).) She provided the names and addresses of 11 "unretained experts," including Dr. Chong and Dr. Fillmore. She also identified two "retained experts" and provided an expert witness declaration for each of the retained experts, stating their qualifications, the nature of their expected testimony, their agreement to testify at trial, the fact they would be sufficiently familiar with the action to submit to a meaningful oral deposition, and the experts' hourly rates for doing so. (§ 2034, subds. (a)(2) & (f)(2).)

Defendant identified his experts in a similar fashion, naming four physicians, including himself, whose expert opinions he expected to offer in evidence at trial. For each, defendant submitted an expert witness declaration in compliance with section 2034, subdivisions (a)(2) and (f)(2). Defendant expressly "reserve[d] the right to call as an expert witness any and all of plaintiff's subsequent treating physicians (nonparty-nonretained experts) whose identities are well-known to plaintiff. These individuals shall be asked questions regarding standard practice, causation, injuries and the nature and extent of damages. This list includes, but is not necessarily limited to, the following: Richard Nelson, M.D., Bala Marar, M.D., Thomas K. Steckle, M.D., John Trelford, M.D., William Gra[v]es, M.D., Robert Hoellsworth, M.D., Lanceford M. Chong, M.D., and Phillip R. Gordon, M.D." No expert witness declaration was submitted for any individual whom defendant identified as a "nonparty-nonretained" expert.

Defendant did not take the depositions of Dr. Chong or Dr. Fillmore.

In his opening statement to the jury, plaintiff's counsel stated his intention to call Dr. Chong and Dr. Fillmore to testify that defendant "fell below the standard of care in his explanation to [plaintiff] and his prescription and removal of [her] bladder." According to counsel, the testimony of Dr. Chong and Dr. Fillmore, and that of plaintiff's retained expert, Dr. Melvin Shiffman, would show plaintiff's bladder did not have to be removed because radiation therapy combined with radical hysterectomy surgery (1) is a treatment within the standard of practice for cervical cancers, (2) would have been a reasonable alternative treatment for plaintiff's cancer, and (3) is an alternative that should have been disclosed to plaintiff so she could have decided whether to choose it rather than the surgery performed by defendant.

Defendant moved to preclude Dr. Chong and Dr. Fillmore from testifying as to the applicable standard of care in treating cervical cancers, arguing plaintiff's failure to submit expert witness declarations for Dr. Chong and Dr. Fillmore precluded her from introducing their testimony on a physician's

standard of practice. (§ 2034, subd. (j)(2).) Claiming he was surprised by plaintiff's announcement that she intended to elicit from Dr. Chong and Dr. Fillmore testimony "on the subject of standard practice," defendant asked the court to limit their testimony to the witnesses's percipient observations and treatment of plaintiff.

Plaintiff responded that, because she had not "retained" Dr. Chong or Dr. Fillmore, expert witness declarations were not required concerning their testimony, regardless of whether she expected to elicit their expert opinions on the applicable standard of care.

The trial court ruled in defendant's favor, holding the statutory scheme required plaintiff to submit expert witness declarations for treating physicians Chong and Fillmore if she desired to elicit their testimony concerning the standard of care. Because plaintiff failed to provide such declarations, the court ruled Dr. Chong and Dr. Fillmore would be permitted to testify only about their knowledge and treatment of plaintiff.

Thereafter, plaintiff took testimony from Dr. William Graves, a gynecologist who examined plaintiff, diagnosed her cervical cancer, referred her to defendant for surgery, and assisted defendant in the surgery. On direct examination, Dr. Graves testified concerning his presurgery examination of plaintiff, his consultations with defendant before and after the surgery, the extent of tissue removal required by an anterior pelvic exteneration (the surgical procedure performed on plaintiff), and his review of a pathological evaluation of the tissue removed from plaintiff.

During cross-examination, defendant's counsel elicited from Dr. Graves, without objection, expert opinion testimony on the standard of practice for physicians treating cervical cancers such as plaintiff's. Dr. Graves testified that radiation therapy, rather than surgery, would not be an effective treatment option for a tumor such as plaintiff's, and that the standard of care neither permitted recommendation of radiation, rather than surgery, as a primary therapy in such a case, nor required performance of a biopsy on the bladder before it was removed to confirm whether the cancer had spread to involve the bladder.

Plaintiff then called Dr. Fillmore to testify; the court did not permit her to answer any questions unrelated to her postsurgery treatment of plaintiff.

After Dr. Fillmore's testimony, plaintiff moved to augment her expert witness disclosure to indicate an intention to seek "standard of care" testimony from Dr. Chong. Plaintiff relied on section 2034, subdivision (l),

which permits the court to entertain a party's motion to submit tardy expert witness information under "exceptional circumstances." By offer of proof, plaintiff indicated that, if permitted, Dr. Chong would testify (1) radiation therapy combined with a radical hysterectomy is just as successful a method of treatment for a cancer like plaintiff's as is the more extensive surgery and bladder removal performed by defendant, and (2) the applicable standard of care required defendant to discuss this and other options with plaintiff prior to surgery and to perform a biopsy or other exploratory procedure before removing plaintiff's bladder, to confirm his suspicion that the wall of plaintiff's bladder may have been invaded by the cancer. Plaintiff also offered to make Dr. Chong available immediately for deposition by defendant, to pay all deposition expenses incurred by defendant, and to make no objection if, in response, defendant wished to make a corresponding augmentation in his expert list to name an opposing radiotherapy expert.

Although the court expressly found plaintiff's failure to submit an expert witness declaration regarding Dr. Chong's testimony was done in "good faith," it denied the request, finding the motion did not present such "exceptional circumstances" as to warrant forgiving its untimeliness. (§ 2034, subd. (*l*).)

Dr. Chong then testified concerning his postsurgery treatment of plaintiff with radiation, and his belief that plaintiff would have been a candidate for pre-surgery radiation therapy.

Plaintiff has not presented us with a transcript of the trial testimony of her retained expert, Dr. Shiffman, or of defendant's witnesses, Dr. Skinner and Dr. Ballon. We have only the closing argument by counsel, in which they suggest Dr. Shiffman testified that defendant's removal of plaintiff's bladder was improper because he neglected to confirm first with a pathological evaluation (such as a biopsy) that the cancer had spread to her bladder, or to seek a second opinion prior to surgery from a radiation oncologist or radiotherapist on alternative treatments; and defendant testified, as an expert, that his treatment of plaintiff fell within the applicable standard of care.

The jury found defendant was not negligent.

DISCUSSION

I

Section 2034, subdivision (a) provides that any party to a civil action, other than an eminent domain proceeding, may demand that all parties

"exchange information concerning each other's expert trial witnesses to the following extent:

"(1) Any party may demand a mutual and simultaneous exchange by all parties of a list containing the name and address of any natural person, including one who is a party, whose oral or deposition testimony in the form of an expert opinion any party expects to offer in evidence at the trial.

"(2) If any expert designated by a party under [section 2034, subdivision (a)(1)] is a party or an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action, the designation of that witness shall include or be accompanied by an expert witness declaration under paragraph (2) of subdivision (f).

"(3) Any party may also include a demand for the mutual and simultaneous production for inspection and copying of all discoverable reports and writings, if any, made by any expert . . . in the course of preparing that expert's opinion [if the expert is a party or an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action]."

The expert witness declaration required for any designated expert who is a party, an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action must be "signed only by the attorney for the party designating the expert, or by that party if that party has no attorney. This declaration shall be under penalty of perjury and shall contain: [¶] (A) A brief narrative statement of the qualifications of [the] expert. [¶] (B) A brief narrative statement of the general substance of the testimony that the expert is expected to give. [¶] (C) A representation that the expert has agreed to testify at trial. [¶] (D) A representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial. [¶] (E) A statement of the expert's hourly and daily fee for providing deposition testimony and for consulting with the retaining attorney." (§ 2034, subd. (f)(2).)

The parties agree that, during discovery, plaintiff did not submit expert witness declarations for treating physicians Chong and Fillmore after identifying them as witnesses expected to offer expert opinion testimony at trial.

The parties disagree only as to whether the trial court properly interpreted section 2034 as requiring plaintiff to have done so.

In plaintiff's view, " 'treating' doctors are considered distinct from 're-tained' expert witnesses" for purposes of exchanging information pursuant to section 2034. According to plaintiff, "[n]either [Chong nor Fillmore] was . . . 'retained' by [plaintiff], meaning hired and then paid a fee in return for providing an opinion as an expert witness. [They] were simply physicians who were currently treating [plaintiff]." It follows, she argues, that because Dr. Chong and Dr. Fillmore were not "retained . . . for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action" (§ 2034, subd. (a)(2)), expert witness declarations were not required, even if plaintiff intended to elicit standard of care testimony from them.

Defendant disagrees, contending expert witness declaration requirements "apply to all proposed expert opinion testimony beyond that based on facts and events to which the expert was a percipient witness," even without a paid retainer agreement between a party and the expert. Defendant argues that, when treating physicians will be called to testify regarding their treat-ment of a patient, including diagnosis and prognosis, such testimony "usu-ally goes to the issue of damages, not liability. In such cases, there is no need to alert the other parties to the expected content of the physicians' opinions." Moreover, such testimony relates to opinions formed for the purpose of treatment, not for the purpose of testifying at trial. In contrast, a treating physician called to testify regarding the standard of care that should have been followed by another doctor addresses liability, and such testimony necessarily reflects opinions arrived at in anticipation of or in preparation for trial, the type of testimony covered by section 2034, subdivisions (a)(2) and (f)(2).

Defendant complains that, if a plaintiff intends to call a treating physician to testify on the standard of care but does not provide an expert witness declaration to that effect, "opposing counsel will be misled into believing that the testimony will be limited to matters concerning the plaintiff's prognosis and treatment by that physician, and will not prepare to deal with [the standard of care testimony]." Such a result, he argues, would be at odds with "[o]ne of the primary purposes of section 2034[,] to eliminate surprise and gamesmanship with respect to such critical testimony. . . . [¶] . . . [L]itigants would be free to use subsequent treating physicians as experts on unidentified subjects, and thereby keep their opponents ignorant of the planned testimony until the subsequent treating physician took the stand in the midst of trial. In short, parties would be able, simply by arranging for

expert testimony from a subsequent treating physician, to surprise their opponents completely with expert testimony on a subject *on which no expert has been declared by either party* to the action." (Original italics.)

Last, defendant argues, plaintiff's construction of the statute would dramatically increase the cost of trial preparation: "Plaintiff's tactic would force defense counsel to guess which, if any, of the designated treating doctors should be deposed regarding his or her potential expert opinion [on standard of care]. This would contravene the distinct purpose of [section 2034,] subdivision (f)(2) to prevent one party from forcing another to depose a long list of designated expert witnesses in order to determine which actually are going to testify as experts on the standard of care."

■ For reasons which follow, we conclude that expert witness declarations would not have been required if plaintiff had only wanted Dr. Chong and Dr. Fillmore to provide expert testimony relating to their treatment of plaintiff, including diagnosis and prognosis. However, when in addition to this testimony they were asked to provide expert opinions on the standard of care that defendant should have used in treating plaintiff, they became experts "retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action[.]" (§ 2034, subd. (a)(2).) This is so even in the absence of a paid retainer agreement between plaintiff and the treating physicians. Therefore, plaintiff was required to provide defendant with expert witness declarations for Dr. Chong and Dr. Fillmore in accordance with section 2034, subdivisions (a)(2) and (f)(2).

In reaching this conclusion, we apply well-established rules of appellate review. ■ The proper interpretation of statutory language is a question of law which this court reviews de novo, independent of the trial court's ruling or reasoning. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1384 [237 Cal.Rptr. 920].) We are guided by the fundamental rules of statutory construction. ■ A court " ' "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' " (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *People* v. *Superior Court* (*Smith*) (1969) 70 Cal.2d 123, 132 [74 Cal.Rptr. 294, 449 P.2d 230].) "In ascertaining legislative intent, a court must look to the language of the statute and 'accord words their usual, ordinary, and common sense meaning based on the language used and the evident purpose for which the statute was adopted.' " (*People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452],

quoting *In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].)[1]

The purposes of California's discovery statutes are, "among other things, to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise." (*Beverly Hospital* v. *Superior Court* (1993) 19 Cal.App.4th 1289, 1294 [24 Cal.Rptr.2d 238]; see also *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266].)

II

We begin with the question whether a treating physician who is asked by a party to give expert opinion testimony on the standard of care can be said to have "form[ed] and express[ed] an opinion in anticipation of the litigation or in preparation for the trial of the action," within the meaning of section 2034, subdivision (a)(2).

The common law rule is that ". . . a physician or other treating health care practitioner, who testifies regarding his or her knowledge of the patient's treatment, diagnosis or prognosis, does not express an expert opinion." (*Brun* v. *Bailey* (1994) 27 Cal.App.4th 641, 652, 654 [32 Cal.Rptr.2d 624]; cf. *Huntley* v. *Foster* (1995) 35 Cal.App.4th 753, 754 [41 Cal.Rptr.2d 358].) This is true whether the treating professional testifies only as to factual matters as to which any lay witness may testify (e.g., "I observed that the patient sustained an injury to his right foot") or testifies as to the patient's diagnosis, prognosis and causation of the injury, based on the knowledge gleaned by the professional at the time of the patient's treatment and on the professional's experience in the particular field of expertise (e.g., "The patient's stress fracture of the second metatarsal will take three weeks to heal"). (*Brun* v. *Bailey, supra,* at pp. 651-653.)

The rationale for regarding a treating physician differently from other experts lies in the assumption that the treating physician's opinions are based upon information acquired from his or her personal observations of the patient. (*Hurtado* v. *Western Medical Center* (1990) 222 Cal.App.3d 1198, 1203 [272 Cal.Rptr. 324].) "Because a percipient expert is not given information by the employing party, but acquires it from personal observation,

---

[1]Plaintiff asks us to take judicial notice of the Reporter's Notes to the Civil Discovery Act of 1986 concerning section 2034. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).) As those notes are of no assistance to us, we deny the request.

[section 2034] treats him or her as a fact witness. Requiring an attorney to analyze such a witness's anticipated testimony and submit the analysis to the opponent would invade the absolute protection given by the work product doctrine to the thought processes of an attorney in preparation for trial." (*Ibid.*, citing *City of Long Beach* v. *Superior Court* (1976) 64 Cal.App.3d 65, 80-81 [134 Cal.Rptr. 468].)

Moreover, generally speaking, a treating physician does not minister to a patient "in anticipation of the litigation or in preparation for the trial of the action." To the contrary, he or she diagnoses the patient's problem and administers treatment in response to it. The treatment is rendered on a schedule dependent on the patient's needs, not those of the litigation process. These factors are a basis for the traditional understanding that a treating physician who provides expert testimony on matters related to his or her treatment of a patient does not form and express an expert opinion in anticipation of litigation or in preparation for trial.

Because the expression of an opinion by a treating physician concerning " 'prognosis, diagnosis, causation of the injuries, duration, or as to the reasonableness and necessity of the doctors' bills' " is regarded as percipient testimony acquired from personal observation rather than from information provided by a party in anticipation of litigation or in preparation for trial, the expert witness declaration requirement of section 2034, subdivisions (a)(2) and (f)(2) does not apply to such testimony. (*Huntley* v. *Foster, supra*, 35 Cal.App.4th at pp. 755-757.)

However, the justification for categorizing a treating physician as a "fact witness" for purposes of discovery dissolves when his or her intended testimony extends beyond what the treating physician has observed, concluded and done, and addresses what another physician should have observed, concluded or done.

When a treating physician intends to testify as to what standard of practice applies generally to practitioners in the same or a related field, or whether the standard has been breached in a particular case, such opinion testimony is extraneous to that physician's treatment of the patient; is not based solely on the treating physician's personal observation of the patient; necessarily relies on information provided by the party; and is rendered for the purpose of trial rather than treatment.

Accordingly, a treating physician who is asked by a party to give expert opinion testimony on the standard of care that should have been used by another physician in treating the patient is one who, in the ordinary,

commonsense meaning of the words, "form[s] and express[s] an opinion in anticipation of the litigation or in preparation for the trial of the action[.]" (§ 2034, subd. (a)(2).)

■ The question remains whether it can be said that a treating physician is "retained," within the meaning of section 2034, subdivision (a)(2), for the purpose of forming and expressing an opinion in anticipation of litigation or in preparation for trial when, as in this case, a party intends to elicit from the treating physician such standard of care testimony but has not entered into a paid contractual relationship with the expert for that testimony.

Section 2034 contains no language defining its use of the word "retained." Plaintiff claims that "retained" denotes exclusively a paid contractual relationship. Defendant retorts that "retained" includes any arrangement, paid or unpaid, by which a treating physician agrees to remain in a party's service to give expert opinion at trial concerning matters other than percipient witness testimony. For reasons that follow, we agree with defendant.

When a treating physician has performed a medical examination of a party and has formed an opinion regarding the party's physical condition, including diagnosis and prognosis, the physician may be compelled to testify as to that opinion even though it is the product of the physician's expert training. (*Agnew* v. *Parks* (1959) 172 Cal.App.2d 756, 764 [343 P.2d 118]; *People* v. *Barnes* (1931) 111 Cal.App. 605, 610 [295 P. 1045]; see also *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227, 234 [231 P.2d 26, 25 A.L.R.2d 1418].) However, a party cannot impose upon an unwilling expert the obligation of undertaking the investigation, research and analysis required to form and express any other expert opinion. (*Agnew* v. *Parks, supra*, at pp. 763-764; *People* v. *Barnes, supra*, at p. 609.) Hence, a treating physician may not be compelled, against his or her will, to render an expert opinion on the standard of care that another physician should have employed in examining or treating the party. (*Ibid.*)

It follows, then, that a party in a medical malpractice action who elicits standard of care testimony from a treating physician necessarily does so pursuant to an agreement that the physician will exceed the ordinary role of a treating physician by providing other expert testimony for purpose of the litigation.

Must this agreement include a contract for remuneration (other than the expert witness fee required by statute for the actual time consumed in examining the expert [see pt. III, *post*]) before it can be said the expert has been "retained" for the purpose of forming and expressing an opinion in anticipation of litigation or in preparation for trial of the action?

In terms of general usage in the context of retaining someone's assistance, to "retain" means "to keep in pay *or* in one's service" (Webster's New International Dict. (3d ed. 1986) p. 1938, italics added; see also VIII Oxford English Dict. (1978) p. 563 [to "engage, hire" or "keep . . . engaged in one's service"]; Black's Law Dict. (5th ed. 1979) p. 1183 [to "engage the services of . . ." or "continue to . . . use"].)

■ Therefore, "retain" connotes either a relationship involving remuneration (as plaintiff insists) or an unpaid agreement to be in one's service (as defendant reasons).

When statutory language is capable of more than one construction, courts must construe it in the context of the nature and purpose of the statute as a whole and give it that meaning which most comports with the apparent intent of the Legislature. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

As previously noted, California's discovery statutes are intended, among other things, to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate both preparation and trial; to prevent delay; and to safeguard against surprise. (*Beverly Hospital* v. *Superior Court, supra,* 19 Cal.App.4th at p. 1294.)

Construing the word "retained" in section 2034, subdivision (a)(2) to include either a paid or unpaid agreement to form and express an expert opinion (other than percipient witness testimony) in anticipation of litigation or in preparation for the trial is the interpretation most consistent with the purposes of our state's discovery statutes.

When a party provides opponents with the name and address of a treating physician from whom the party expects to elicit an expert opinion at trial (§ 2034, subd. (a)(1)) and intends to have the witness testify on the standard of care but submits no expert witness declaration for the treating physician (§ 2034, subd. (a)(2)), opponents are not put on notice of information which may encourage settlement. (Cf. *Beverly Hospital* v. *Superior Court, supra,* 19 Cal.App.4th at p. 1294 [discovery statutes are intended to encourage settlement by educating the parties as to the strengths of their claims and defenses].)

Moreover, by not submitting an expert witness declaration for the treating physician, the party implies that the expected expert opinion testimony

derives exclusively from the physician's personal observation of the patient. Hence, opponents may be taken by surprise when the party seeks to elicit the treating physician's opinion on the standard of care and, thus, may not be prepared to deal with it. (Cf. *Beverly Hospital* v. *Superior Court, supra,* 19 Cal.App.4th at p. 1294 [discovery statutes are intended to safeguard against surprise].)[2]

In addition, the costs of trial preparation would be dramatically increased. As defendant correctly points out, opposing counsel would have "to guess which, if any, of the designated treating doctors should be deposed regarding his or her potential expert opinion [on standard of care]. This would contravene the distinct purpose of [section 2034,] subdivision (f)(2) to prevent one party from forcing another to depose a long list of designated expert witnesses in order to determine which actually are going to testify as experts on the standard of care." (Cf. *Beverly Hospital* v. *Superior Court, supra,* 19 Cal.App.4th at p. 1294 [discovery statutes are intended to expedite and facilitate trial preparation].)

■ Applying an ordinary, commonsense meaning to the statutory language in a manner consistent with its evident purpose, we conclude that, when a treating physician has been designated by a party as a person whose "testimony in the form of an expert opinion [the] party expects to offer in evidence at trial" (§ 2034, subd. (a)(1)), and the party intends to elicit from the witness an expert opinion on the standard at care that should have been employed by another, the treating physician "has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action, [and] the designation of that witness shall include or be accompanied by an expert witness declaration . . . ." (§ 2034, subd. (a)(2).)

Consequently, the trial court correctly held that plaintiff was required to provide expert witness declarations concerning her treating physicians' expected standard of care testimony and that her failure to do so was a basis to exclude said testimony. (§ 2034, subd. (j) [except when a motion to submit

---

[2]"The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony . . . , unless the conduct required by the particular circumstances is within the common knowledge of the layman." (*Sinz* v. *Owens* (1949) 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R.2d 757], citations omitted.) In these cases, " 'the need for pretrial discovery is greater with respect to expert witnesses than it is in the case of ordinary fact witnesses. If a party is going to present the testimony of experts during the trial, the other parties must prepare to cope with the testimony to be given by people with specialized knowledge in a scientific or technical field.' " (*Zellerino* v. *Brown* (1991) 235 Cal.App.3d 1097, 1117 [1 Cal.Rptr.2d 222].)

tardy expert witness information is granted, "on objection of any party who has made a complete and timely compliance (with discovery requirements), the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to . . . [¶] . . . [¶] (2) Submit an expert witness declaration. . . ."].)

## III

■ Plaintiff argues our interpretation is wrong because it makes related statutory language "unnecessary and mere surplusage," a result which must be avoided. The language to which she refers is contained in the following sections dealing with the witness fee that must be provided to an expert called to testify at a deposition or at trial in a civil action.

Section 2034, subdivision (i)(2) (hereafter section 2034(i)(2)) provides in pertinent part: "A party desiring to depose any expert witness, other than a party or employee of a party, who is either (A) an expert described in paragraph (2) of subdivision (a) except one who is a party or an employee of a party, (B) a treating physician and surgeon or other treating health care practitioner who is to be asked during the deposition to express opinion testimony, including opinion or factual testimony regarding the past or present diagnosis or prognosis made by the practitioner or the reasons for a particular treatment decision made by the practitioner, but not including testimony requiring only the [translation of words and symbols in medical records] . . . , or (C) an architect, professional engineer, or licensed land surveyor, who was involved with the original project design or survey for which he or she is asked to express an opinion within his or her expertise and relevant to the action or proceeding, shall pay the expert's reasonable and customary hourly or daily fee for any time spent at the deposition . . . ."

Government Code section 68092.5, subdivision (a) (hereafter section 68092.5(a)) contains similar language: a party must pay the expert witness's reasonable and customary fee for the actual time consumed in the examination of that witness whom the party has called to testify before any court, tribunal, or arbiter in a civil action or proceeding. Like section 2034(i)(2), this statute applies to both "(1) an expert described in paragraph (2) of subdivision (a) of Section 2034 of the Code of Civil Procedure" and "(2) a treating physician and surgeon or other treating health care practitioner who is to be asked to express an opinion during the action or proceeding[.]"

In plaintiff's view, by identifying treating physicians as a category other than retained experts described in section 2034, subdivision (a)(2), these

sections suggest the Legislature intended that, regardless of the subject matter of their testimony, treating physicians are distinct from retained expert witnesses and thus not subject to the expert witness declaration requirement. To construe the statutory scheme otherwise, plaintiff argues, "renders the second clause of [sections 2034(i)(2) and 68092.5(a)] (pertaining to 'treating' doctors) unnecessary and mere surplusage." We disagree.

Before its amendment in 1995, section 2034(i)(2) provided that expert witness fees must be paid for the actual time consumed in the deposition of not only a retained expert but also of "(B) a treating physician and surgeon or other treating health care practitioner who is to be asked to express an opinion during the deposition[.]" (Stats. 1993, ch. 678, § 1.)

In *Brun* v. *Bailey, supra,* 27 Cal.App.4th 641, this court held the aforesaid language of section 2034(i)(2)(B) did not require payment of an expert witness fee to a treating physician who "testifies regarding his or her knowledge of the patient's treatment, diagnosis or prognosis" because, pursuant to common law, such testimony does not constitute an expert opinion. (27 Cal.App.4th at pp. 654-655.) Hence, a treating physician who gave only percipient expert opinion testimony was not entitled to an expert witness fee, whereas a treating physician who also gave standard of care opinion testimony would receive such compensation.

The Legislature acted quickly to abrogate this holding (Kennedy & Martin, Cal. Expert Witness Guide (Cont.Ed.Bar 2d ed. 1996) § 10.38, p. 285) by amending the expert witness fee requirement of section 2034(i)(2) to clarify that it applies not only to retained experts but also to "(B) a treating physician . . . who is to be asked . . . to express opinion testimony, *including opinion or factual testimony regarding the past or present diagnosis or prognosis made by the practitioner or the reasons for a particular treatment decision made by the practitioner . . . .*" (Stats. 1995, ch. 797, § 1, italics added.)

This amendment indicates that, contrary to the holding in *Brun* v. *Bailey, supra,* 27 Cal.App.4th 641, the Legislature intended the second clauses of sections 2034(i)(2) and 68092.5(a) to apply to treating physicians who give percipient expert opinion testimony on the patient's treatment, diagnosis or prognosis. In other words, the Legislature intended to distinguish said testimony from that of a retained expert covered under the clause (A) of section 2034(i)(2), such as a treating physician who has been retained to give an opinion on the standard of care that should have used by another physician.

Thus, our interpretation that treating physicians asked to give standard of care testimony are retained experts within the meaning of section 2034, subdivision (a)(2), does not make the language of sections 2034(i)(2)(B) and 68092.5(a)(2) unnecessary and mere surplusage.

We recognize that, in amending section 2034(i)(2)(B), the Legislature used the term "including" when specifying that the expert witness fee requirement applies to treating physicians who are asked "to express opinion testimony, *including* opinion or factual testimony regarding the past or present diagnosis or prognosis made by the practitioner or the reasons for a particular treatment decision made by the practitioner." (Italics added.) To the extent this illustrative language can be read to apply the subsection to treating physicians who are retained to give standard of care opinion testimony, it overlaps section 2034(i)(2)(A) under our interpretation of section 2034, subdivision (a)(2).

An interpretation which would render terms of a statute surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning. (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 378 [223 Cal.Rptr. 826].) However, no part of section 2034(i)(2) is rendered meaningless by our interpretation of section 2034, subdivision (a)(2). In its effort to undo the effect of *Brun* v. *Bailey*, *supra*, 27 Cal.App.4th 641, the Legislature has at most created a minor redundancy in section 2034(i)(2) which does not impair in the least the distinct purpose served by its amendment: to clarify that the expert witness fee requirement applies not only to a retained expert but also to a health care practitioner called by a party to testify regarding the diagnosis or prognosis made by the practitioner or the reasons for the practitioner's treatment decision.

## IV

We next consider plaintiff's contention that the court erred in excluding Dr. Chong's standard of care testimony rather than permitting plaintiff to submit a tardy expert witness declaration setting forth that expected testimony.

The trial court shall impose the exclusion sanction for failure to submit an expert witness declaration only if noncompliance is "unreasonabl[e]" (§ 2034, subd. (j); *Stanchfield* v. *Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1504 [44 Cal.Rptr.2d 565]) and the court denies a request for leave to file a tardy declaration under section 2034, subdivision (*l*).

Section 2034, subdivision (*l*) states that "under exceptional circumstances" the trial court may permit a party to submit an expert witness

declaration after the time limit for the completion of discovery. This statute provides that the court "shall grant leave to submit tardy expert witness information only after taking into account the extent to which the opposing party has relied on the absence of a list of expert witnesses, and determining that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits, and that the moving party (1) failed to submit that information as the result of mistake, inadvertence, surprise, or excusable neglect, (2) sought that leave promptly after learning of the mistake, inadvertence, surprise, or excusable neglect, and (3) has promptly thereafter served a copy of the proposed expert witness information described in subdivision (f) on all other parties who have appeared in the action." The statute also specifies that the order granting late discovery "shall be conditioned on the moving party making that expert available immediately for a deposition . . . , and on such other terms as may be just, including, but not limited to, leave to any party opposing the motion to designate additional expert witnesses or to elicit additional opinions from those previously designated, a continuance of the trial for a reasonable period of time, and the awarding of costs and litigation expenses to any party opposing the motion."

Whether to grant relief from the failure to timely submit an expert witness declaration is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of manifest abuse of that discretion. (Cf. *Dickison* v. *Howen* (1990) 220 Cal.App.3d 1471, 1476 [270 Cal.Rptr. 188].)

In seeking leave to submit a tardy expert witness declaration for Dr. Chong's proposed standard of care testimony, plaintiff's counsel addressed all the factors which the statute requires the court to take into account in ruling on the motion. Counsel explained that the failure to submit one earlier was due to his mistake in believing the statute did not require expert witness declarations for treating physicians who are expected to give standard of care testimony. Counsel noted the motion was made promptly, the day after the trial court sustained defendant's objection to the testimony in question and counsel thus learned of his mistaken interpretation of the statute. There is some indication in the record, although not conclusive, that plaintiff served defendant with a copy of the proposed expert witness information. In any event, counsel made an oral offer of proof in defendant's presence as to the standard of care testimony plaintiff wished to elicit from Dr. Chong, i.e., that radiation combined with a radical hysterectomy would have had an equal or better success rate for plaintiff's cervical cancer than would the treatment used by defendant; that the applicable standard of care required defendant to discuss this option with plaintiff; and that the standard of care

required defendant to perform a biopsy or other exploratory procedure before removing plaintiff's bladder, to confirm his suspicion that the wall of the bladder may have been invaded by cancer. Counsel acknowledged defendant had relied on the absence of an expert witness declaration for Dr. Chong, but argued defendant would not be prejudiced by the tardy submission of such a declaration. He pointed out that defendant already had anticipated the proposed testimony and had acted to counter it when, during cross-examination of Dr. Graves, defendant elicited Graves's expert opinion that radiation therapy would not be an effective treatment option for plaintiff's cancer, and that the standard of care did not permit radiation, rather than surgery, as a primary treatment, and did not require a biopsy before the bladder was removed. Counsel offered to make Dr. Chong available immediately for deposition at plaintiff's expense and disclosed that Chong "has not provided expert testimony before." Recognizing defendant might feel the need to bring in another defense expert to counter Dr. Chong's standard of care testimony, counsel suggested plaintiff had no objection to a continuance for this purpose or to any other conditions the court deemed appropriate.

In opposing the motion, defendant's counsel simply argued that granting plaintiff's request would be "extremely prejudicial" to the defense, but did not specify why, other than objecting that he would have to "conduct entirely new discovery and prepare for an entirely different case than the one [plaintiff] came here to court to present."

Ordinarily, we would presume the trial court considered all the factors set forth in section 2034, subdivision (*l*) in ruling on the motion. (Evid. Code, § 664.) In this case, however, the record shows the court did not do so. In denying the motion, the court found plaintiff's counsel acted in good faith when he misconstrued the statutory language governing expert witness declarations, but the court concluded this mistake did not constitute an "exceptional circumstance" which would warrant "this motion for relief as late as during trial[.]"

The discussion between the court and counsel establishes the court was concerned only with the timing of the motion. It made no finding that defendant would suffer prejudice if plaintiff's motion was granted, nor did it consider whether plaintiff had offered defendant "every opportunity to recover from any disadvantage caused by the surprise." (*Dickison* v. *Howen*, *supra*, 220 Cal.App.3d at p. 1479; § 2034, subd. (*l*).)

In denying the motion by focusing on its timing and failing to consider and apply all the factors set forth in section 2034, subdivision (*l*), the court abused its discretion. Nothing in the statute prohibits tardy submission of

expert witness information during trial when justified by exceptional circumstances. To the contrary, by specifying that leave to submit tardy information shall be conditioned on "terms as may be just, including . . . a continuance of the trial for a reasonable period of time[,]" the statute contemplates that such a motion may be granted during trial. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1995) ¶ 8:1736, p. 8J-35.)

We cannot say the error is harmless.

■ An honest mistake of law is a valid ground for relief based on "mistake, inadvertence, surprise or excusable neglect" where the problem is complex and debatable. (*City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 346 [85 Cal.Rptr. 149, 466 P.2d 693] [§ 473 motion].) "[T]he determining factors are the reasonableness of the misconception and the justifiability of the lack of determination of the correct law." (*Ibid.*) (9c) The trial court found that plaintiff's counsel acted in good faith in construing section 2034 not to require an expert witness declaration for Dr. Chong, and in this matter of first impression, it cannot be said that counsel's misconception was unreasonable. Moreover, upon learning of his mistake of law, counsel promptly sought leave to submit a tardy expert witness declaration for Dr. Chong and informed defendant of the standard of care testimony plaintiff intended to elicit from Chong. The record indicates defendant did not rely to his detriment on the absence of a timely filed declaration because he not only was prepared to meet Dr. Chong's proposed testimony, he already had acted to rebut it when he elicited favorable testimony from Dr. Graves in apparent anticipation that plaintiff might attempt to introduce standard of care testimony concerning radiation treatment and the advisability of a biopsy before removal of the bladder. To further allow defendant to recover from any disadvantage, plaintiff offered to make Dr. Chong immediately available for deposition at plaintiff's expense and was prepared to accept any other condition as would have been just.

Under the circumstances, we are compelled to conclude that, if the trial court had considered all the statutory factors, there is a reasonable probability the court would have granted plaintiff's motion for leave to file a tardy expert witness declaration and allowed Dr. Chong's standard of care testimony. It also is reasonably probable the jury would have reached a result more favorable to plaintiff if the jurors had heard Chong's expert opinion that defendant's treatment of plaintiff's cancer did not meet the applicable standard of care. Accordingly, the judgment cannot stand. (*Osborn* v. *Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 254-255 [7 Cal.Rptr.2d 101]; *Gordon* v. *D & G Escrow Corp.* (1975) 48 Cal.App.3d 616, 626-627 [122 Cal.Rptr. 150].)

DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

Sparks, Acting P. J., concurred.

**DAVIS, J.,** Concurring and Dissenting.—The determinative facts are few. Upon demand a party must provide a list of every expert whose opinion the party expects to introduce at trial. (Code Civ. Proc., § 2034, subd. (a)(1) [undesignated section references will be to this code].) There is no dispute the plaintiff complied with this provision, including her treating doctors on her expert witness list. "If any expert [thus designated] . . . is a party or an employee of a party, or has been retained by a party for the purpose of forming and expressing an opinion," the party must also provide an expert witness declaration and produce discoverable reports and writings on which the expert relied. (*Id.,* subds. (a)(2), (3), (f)(2) [subsequent undesignated subdivision references are to this statute].) As the plaintiff did not comply with this provision in connection with her treating doctors, the trial court refused to allow them to give their expert opinion on the issue of whether the defendant's treatment came within the prevailing standard of care. It also denied her motion to submit a tardy declaration. (Subd. (*l*).)

I concur in the reversal of the judgment, and fully concur with part IV of the discussion in the majority opinion that the trial court prejudicially abused its discretion in denying the plaintiff's motion under subdivision (*l*) to submit a tardy expert witness declaration subject to ameliorative conditions. In light of this prejudicial error, I would not even reach the issue of whether it was correct at the outset to apply the "hired-gun" provisions of subdivision (a)(2) to the plaintiff's treating doctors. However, as I shall explain, on the merits of the issue I must respectfully dissent from the conclusion in part II and part III of the discussion in the majority opinion.

I. *"Plain" meaning*

The initial question is whether the language of subdivision (a)(2) is ambiguous when applied to the particular set of facts presented by this case such that we need to look to any sources external to this subdivision for aid in interpreting it. (*Sanford* v. *Garamendi* (1991) 233 Cal.App.3d 1109, 1117 [284 Cal.Rptr. 897].)

As we reiterated in *Brun* v. *Bailey* (1994) 27 Cal.App.4th 641, 651-653 [32 Cal.Rptr.2d 624], under the common law a doctor's testimony regarding a patient's past treatment (including diagnoses and prognoses) is not an

"expert opinion" in the ordinary sense of a witness who recounts specialized knowledge, but is instead merely another species of a percipient witness recounting specific facts which happen to be discernible only by means of expertise. In light of the realities of medical practice, I believe it is impossible for a doctor to treat a patient for complications alleged to stem from a previous doctor's malpractice *without* considering as part of the diagnosis whether prior treatment complied with the prevailing standard of care. It does not seem plausible that a doctor can address symptoms or complications without determining whether they are the result of a natural pathology, or are instead the result of shoddy medical intervention. Since these conclusions are inextricably entwined with the doctor's past diagnosis (to which the declaration requirement does *not* apply [*Zellerino* v. *Brown* (1991) 235 Cal.App.3d 1097, 1116 (1 Cal.Rptr.2d 222)]), we should not artificially parse the treating doctor's opinion regarding the standard of previous care and subject only that topic of testimony to the dance of the expert witnesses prescribed by section 2034. Thus, the "plain" meaning of section 2034 should not apply to the opinion of a party's treating doctors regarding past medical treatment.

Even if we do pare a treating doctor's testimony into different piles of shavings, I do not think we can say the plaintiff's treating doctors were retained "*for the purpose*" of offering expert testimony at trial and thus come within subdivision (a)(2). The plaintiff retained them for the purpose of *treatment*. Only later during the course of this already established relationship did the plaintiff extend the *scope* of their duties by requesting an opinion on her prior treatment by the defendant. I am not convinced, as is the majority, that adding additional duties without commensurate remuneration can constitute a separate *gratis* "retainer."

To conclude that a treating doctor's opinion on the compliance of previous treatment with the standard of care is not within the plain meaning of the statute does not play havoc with the purposes underlying section 2034. Once a defense medical malpractice attorney learns the names and addresses of the opponent's subsequent treating doctors (whether through interrogatories or otherwise), a reasonably competent attorney would recognize these are the witnesses with the greatest potential for possessing an opinion on the competence of the prior treatment. (See Kennedy & Martin, Cal. Expert Witness Guide (Cont.Ed.Bar 2d ed. 1996) § 10.2, pp. 251-252.) Thus, even if the entire Civil Discovery Act were nonexistent, subsequent treating doctors are a natural focus of litigation strategy; there is no need for a declaration to alert an opponent to the significance of subsequent treating

doctors as witnesses.[1] Unlike the majority opinion, I do not foresee in the ordinary case that opposing counsel will be confronted with a laundry list of subsequent treating doctors which can be winnowed down only after much time and expense. The category of treating doctors contrasts with the spectrum of hired-gun experts available to any party on any subject for the right price, none of whom may be known to the opponent by name, qualifications, or subject. With the hired gun, the declaration requirement alerts an opponent to the proposed subject of testimony so that the opponent can determine if it is worthwhile to pursue further discovery of the hired gun or obtain a more renowned hired gun.

However, the fact the parties and the majority opinion impliedly or implicitly assume that a treating doctor's opinion on the quality of prior treatment is indeed segregable from the treating doctor's past diagnosis, and conclude explicitly that requesting an opinion regarding the quality of prior treatment creates a retainer separate from the treatment retainer, demonstrates the futility of attempting to categorize any language as having a "plain" meaning. Since my colleagues find the language ambiguous, and my colleagues are honorable men (cf. Shakespeare, Julius Caesar (Internat. Press ed. 1926) act III, scene 2, lines 87-77, 91-92, 98-99, 103-104), I follow them in their quest for meaning in sources external to the subdivision itself.

## II.  *Interpretive aids*

### A.  *General principles*

Absent irreconcilable differences, we should construe statutory language with reference to the scheme of which it is a part so that we may harmonize the whole. (*County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 58 [233 Cal.Rptr. 38, 729 P.2d 202]; *Rideout Hospital Foundation, Inc.* v. *County of Yuba* (1992) 8 Cal.App.4th 214, 219 [10 Cal.Rptr.2d 141].) If possible, we must give significance to *every* word, phrase, sentence, and part of an act in pursuing legislative intent. (*People* v. *Hicks* (1993) 6 Cal.4th 784, 796 [25 Cal.Rptr.2d 469, 863 P.2d 714]; *Sanford* v. *Garamendi, supra,* 233 Cal.App.3d at p. 1119.) Courts may adopt an interpretation creating surplusage only where it is unavoidable. (*People* v. *Jones* (1988) 46 Cal.3d 585, 601 [250 Cal.Rptr. 635, 758 P.2d 1165].)

From these postulates also flows the extrinsic interpretive principle of in pari materia. (2B Sutherland, Statutory Construction (5th ed. 1992) § 51.01,

---

[1]The defendant argues he is entitled to assume a treating doctor will "ordinarily" testify only to matters regarding damages rather than liability. He provides no authority for this assumption.

pp. 117-118.) As this principle is explained in *DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 778 [38 Cal.Rptr.2d 699, 889 P.2d 1019], "When two statutes touch upon a common subject, they are to be construed in reference to each other, so as to 'harmonize the two in such a way that *no* part of *either* becomes surplusage.'" (Italics added.)

Before attempting to draw meaning from other statutory provisions, one must first demonstrate their relevance to the provision at issue. I thus turn to a chronicle of the background of the provisions I consider significant.

### B. *Statutory history*

1. *Pre-1986*: In 1968, the Legislature enacted Government Code section 68092.5, which regulated the payment of expert-witness fees. In pertinent part, the statute provided, "A person who is not a party to the action and who is required to testify before any court . . . , or in the taking of a deposition . . . , *solely* as to any expert opinion . . . shall receive reasonable compensation." (Stats. 1968, ch. 1243, § 1, p. 2352, italics added.) This provision remained unchanged through two subsequent revisions. (Stats. 1971, ch. 1126, § 1, p. 2140; Stats. 1979, ch. 746, §§ 6, 7, pp. 2593-2594.) As interpreted by *Bureau of Medical Economics* v. *Cossette* (1974) 44 Cal.App.3d Supp. 1 [118 Cal.Rptr. 242], a doctor providing both expert percipient testimony (i.e., past treatment, diagnoses, and prognoses) and expert opinion could not invoke this statute because the subject of the testimony was not *solely* expert opinion.

In 1978, the Legislature enacted former sections 2037 to 2037.9 as a comprehensive scheme to regulate the discovery of expert witnesses, which would prevail over other inconsistent discovery statutes. (*Tahoe Forest Inn* v. *Superior Court* (1979) 99 Cal.App.3d 509, 512-513 [160 Cal.Rptr. 314].) Former section 2037.3 required a party on request to provide both a list of expected expert witnesses and a brief narrative statement concerning each expert witness's proposed testimony. (Stats. 1978, ch. 1069, § 1, p. 3286.)[2] Former section 2037.7 provided, "Any other provision of law notwithstanding, any party desiring to take the deposition of a person retained as an expert by another party to a case shall pay the expert a reasonable fee . . . ." (Stats. 1978, ch. 1069, § 1, p. 3287.) The Legislature promptly amended this provision in 1980 to add (in pertinent part) that the deposition of the expert had to be "*solely* for the purpose of obtaining any expert

---

[2]Under this statute, there was thus no distinction between the expert witness list and the experts subjected to the narrative requirement; the failure to disclose the nature of the proposed opinion of any expert witness barred the witness from testifying to the opinion. (*Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907, 919 [184 Cal.Rptr. 393].)

opinion which the deponent holds upon the basis of his or her special knowledge . . . ." (Stats. 1980, ch. 552, § 1, p. 1535, italics added.) As a result, this specific provision governing fees for expert witness depositions contains the same restriction as the general statute governing fees for expert testimony at trials or depositions. (*Brun* v. *Bailey*, *supra*, 27 Cal.App.4th at p. 654.)

2. *1986-1995*: In 1986, the Legislature both amended Government Code section 68092.5 to replace "solely" with "primarily" (Stats. 1986, ch. 560, § 2, p. 1983) and enacted the Civil Discovery Act, which repealed former sections 2037 to 2037.9. (Stats. 1986, ch. 1336, § 3, p. 4758.) It transferred the substance of former section 2037.3 governing discovery of expert witnesses to subdivision (a)(1) and (2);[3] in transferring this subject to the new statute, the Legislature intended to make a " 'slight change in existing law' " by limiting the need to provide a narrative statement of the proposed expert testimony to the categories identified in subdivision (a)(2). (*Hurtado* v. *Western Medical Center* (1990) 222 Cal.App.3d 1198, 1203 [272 Cal.Rptr. 324] [citing the reporter's notes to the act]). It also transferred to section 2034 as subdivision (i)(2) the substance of former section 2037.7 governing fees for expert testimony at a deposition. (*Brun* v. *Bailey*, *supra*, 27 Cal.App.4th at p. 654.) As originally enacted, this subdivision provided, "A party desiring to depose any expert, described in [subdivision (a)(2)], except one who is a party or employee of the party . . . or any treating physician or other treating health care practitioner who is to be asked to express an opinion, shall pay the reasonable . . . fee . . . . In a worker's compensation case . . . , a party desiring to depose any expert on another party's expert witness list shall pay this fee." (Stats. 1986, ch. 1336, § 2, pp. 4755.)

In 1988, the Legislature amended Government Code section 68092.5. It now tracked the language of section 2034, subdivision (i)(2): "A party requiring testimony before any court . . . from any (i) expert described in [section 2034, subdivision (a)(2)], except one who is a party or an employee of a party, or (2) treating physician or other treating health care practitioner who is asked to express an opinion . . . , shall pay the reasonable . . . fee . . . of that expert . . . ." It also added a provision emphasizing that "The deposition of an expert witness is governed by Section 2034 . . . ." (Stats. 1988, ch. 275, § 1, pp. 971, 972.) The final significant tinkering with this statute occurred in 1990. As amended, it provided in pertinent part, "A party requiring testimony before any court . . . , from any expert witness, other than a party or employee of a party, who is either (1) an expert described in

[3]The pertinent portions of these subdivisions as enacted are the same as their present versions. (Cf. Stats. 1995, ch. 797, § 1; Stats. 1986, ch. 1336, § 2, pp. 4752-4753.)

[section 2034, subdivision (a)(2)], (2) a treating physician . . . or other treating health care practitioner who is to be asked to express an opinion during the action . . . , or (3) an architect, professional engineer, or licensed land surveyor who was involved with the original project design or survey for which he or she is asked to express an opinion within his or her expertise . . . , shall pay the reasonable . . . daily fee . . . ." (Stats. 1990, ch. 1392, §§ 4, 6, pp. 6370, 6372.)[4]

In the same 1990 chapter, the Legislature amended section 2034, subdivision (i)(2) to provide: "A party desiring to depose any expert witness, other than a party or employee of a party, who is either (A) an expert described in [subdivision (a)(2)] except one who is a party or an employee of a party, (B) a treating physician . . . or other treating health care practitioner who is to be asked to express an opinion during the deposition, or (C) an architect, professional engineer, or licensed land surveyor, who was involved with the original project design or survey for which he or she is asked to express an opinion within his or her expertise . . . , shall pay the expert's reasonable . . . fee . . . ." (Stats. 1990, ch. 1392, §§ 2, 5, pp. 6365-6366, 6371.)

3. *1995 to date*: In 1994, we had held in *Brun* that a chiropractor who testified at a deposition only as an "expert percipient witness" did not express an expert opinion under the common law, and thus was not entitled to expert witness fees under the 1990 version of the statute.[5] (27 Cal.App.4th at pp. 645, 654-655.) To abrogate this holding (Kennedy & Martin, Cal. Expert Witness Guide, *supra*, § 10.38, p. 285), the Legislature promptly amended subdivision (a)(2) in 1995 (subsequent to the present dispute) to "revise this provision to include a treating physician . . . or other treating health care practitioner who is asked during the deposition to provide opinion testimony . . . including certain factual testimony." Thus, the provision presently reads, "A party desiring to depose an expert witness, other than . . . , who is either (A) an expert described in [subdivision (a)(2)] except . . . , (B) a treating physician . . . or other treating health care practitioner who is to be asked during the deposition to express opinion

---

[4]This language is unchanged in the present version of the statute. (Stats. 1993, ch. 678, § 1.)

[5]In 1992, the Legislature amended section 2034, subdivision (i)(2) "to apply only to those experts designated in an exchange of information [§ 2034, subd. (c)] . . . ." (Leg. Counsel's Dig., Assem. Bill No. 2913, Stats. 1992, ch. 1301.) The amendment also deleted the provision that the treating health care practitioner be asked to express an opinion during the deposition. However, the Legislature promptly abrogated these changes in an urgency measure in March 1993, returning the statute to its 1990 version. (Leg. Counsel's Dig., Assem. Bill No. 240, Stats. 1993, ch. 3.)

testimony, including opinion or factual testimony regarding the past or present diagnosis or prognosis made by the practitioner or the reasons for a particular treatment decision made by the practitioner, but not [translating symbols in medical records], or (C) an architect . . . , shall pay . . . . In a worker's compensation case . . . , a party desiring to depose any expert on another party's expert witness list shall pay this fee." (Stats. 1995, ch. 797, § 1.) However, the Legislature did not relax the same restriction on trial testimony in Government Code section 68092.5.

I have digressed at length on these numerous amendments not because they are all necessarily pertinent to the present dispute but to show that the topics of expert witness disclosure and fees for expert testimony have been the subject of repeated legislative scrutiny over three decades, and to show these topics have generally been considered together. Thus, this closely interwoven history of subdivisions (a)(2) and (i)(2), and Government Code section 68092.5 demonstrates that one must read subdivisions (a)(2) and (i)(2) together, that one must consider Government Code section 68092.5 in pari materia with these provisions, and that one cannot consider the particular language employed by the Legislature to be mere oversight. I turn next to the consequences of these postulates.

### C.

As the plaintiff correctly points out, subdivision (i)(2) (and Government Code section 68092.5) draws an express distinction between experts "described in" subdivision (a)(2) and treating doctors (or architects, professional engineers, and licensed land surveyors). All of these specially designated experts have presumably been "retained" (as the majority opinion construes the terms) for the purpose of offering their opinion at trial, and thus all should be experts "described in" subdivision (a)(2). Yet since 1986 the Legislature has separately entitled these categories of witnesses to remuneration for their opinions, and has preserved this distinction despite several revisitations to subdivision (i)(2) and Government Code section 68092.5. If one construes subdivision (a)(2) as including a party's treating doctors, this renders subdivision (i)(2)(B) (and Government Code section 68092.5, subdivision (a)(2)) superfluous.[6] Neither the defendant (nor the majority opinion) identifies why one should treat this resulting superfluity as unavoidable. (*People* v. *Jones, supra,* 46 Cal.3d at p. 601.) As this would be entirely contrary to the respect we are to accord legislative action (*Traverso* v. *People ex rel. Dept. of Transportation* (1996) 46 Cal.App.4th 1197, 1209 [54

---

[6]Because the issue is not before us, I do not express any opinion on the interplay of subdivisions (a)(2) and (i)(2)(C) (or Government Code section 68092.5, subdivision (a)(3)).

Cal.Rptr.2d 434]), I would therefore interpret subdivision (a)(2) as excluding treating doctors in order to imbue these provisions with significance.

In its disagreement with the plaintiff's superfluity argument, the majority opinion focuses exclusively on the (post-trial) 1995 amendment of subdivision (i)(2)(B). The majority opinion interprets the legislative response to *Brun* as an indication *Brun*'s holding was contrary to the intent underlying subdivision (i)(2)(B). (Maj. opn., *ante*, at p. 133.) It thus concludes the 1995 amendment reinstated an intended distinction between treating doctors testifying as experts, who are included in subdivision (a)(2) (and thus subdivision (i)(2)(A) and Government Code section 68092.5, subdivision (a)(1)), and treating doctors testifying to expert perceptions, who are the subject of subdivision (i)(2)(B) (and Government Code section 68092.5, subdivision (a)(2)). Read this way, the majority opinion concludes there is a purpose for the distinct category for treating doctors. (Maj. opn., *ante*, at p. 134.) The majority opinion acknowledges even this interpretation does not resolve the "minor redundancy in section 2034(i)(2)" because subdivision (i)(2)(B) expressly states that treating doctors are entitled to fees for expressing "opinion testimony, *including* [expert perception testimony]" (italics added), and thus a treating doctor offering an expert opinion still comes within both subdivision (i)(2)(A) and (i)(2)(B). (Maj. opn., *ante*, at p. 134.) However, the majority opinion concludes this redundancy "does not impair in the least the distinct purpose served by [the 1995] amendment," namely to reiterate the intent to reimburse *both* retained experts and treating doctors providing expert perception testimony. (*Ibid.*)

In the first place, I do not think we can infer the 1995 amendment necessarily indicated *Brun* was "contrary" to previously existing legislative intent. As I have recounted above, a party initially had to pay an expert witness fee *whenever* deposing another party's retained expert regardless of the subject of the deposition testimony. From 1980 to 1986, an expert witness, such as a treating doctor, became entitled to fees only for opinion testimony at depositions. The 1986 enactment creating the statutory dichotomy between retained experts and treating doctors eliminated this limitation, entitling an expert witness to fees whenever "asked to express an opinion" at a deposition. In 1994, *Brun* merely explained the consequence for a treating doctor of using "opinion" in this statute in light of the common law rule for expert perception testimony. The amendment thus can reflect nothing more than the persuasiveness of the medical lobby to return to pre-1980 law, rather than any intent which underlay the 1986 creation of the dichotomy. Moreover, the assertion that the "minor redundancy" existing after the 1995 amendment did not impair the purpose of the *amendment* ignores the fact the superfluity was not a function of the 1995 amendment. It has existed since

the 1986 enactment, and the Legislature imported it into the Government Code in 1988. Finally, given the Legislature's numerous reconsiderations of the fee provisions, I do not believe one can conclude that when the Legislature added language in 1995 it overlooked the introductory clause to subdivision (i)(2)(B) in its haste to abrogate *Brun*. I would therefore conclude that the 1995 amendment of subdivision (i)(2)(B) is consistent with a legislative interpretation of subdivision (a)(2) that excludes treating doctors giving expert opinions, and simply broadens the entitlement of treating doctors to fees for expert percipient testimony.

III.

For all these reasons, I believe the trial court erred in subjecting the plaintiff's treating doctors to the requirements of subdivision (a)(2) as a condition of their testimony at trial on the defendant's compliance with the prevailing standard of care. However, even assuming the trial court labored under this misapprehension, I agree with the majority opinion that the trial court prejudicially erred in denying the plaintiff relief pursuant to subdivision (*l*). I therefore concur the judgment must be reversed.

A petition for a rehearing was denied February 18, 1997, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 16, 1997.