Filed 9/18/14  Soto v. Knight Transporation CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CONRADO SOTO, | |
| Plaintiff and Appellant, | E056536 |
| v. | (Super.Ct.No. RIC530528) |
| KNIGHT TRANSPORTATION et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Gloria Trask, Judge.

Affirmed.

The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Ghormley & Associates, Scott L. Ghormley; Watkins, Blakely & Torgerson and

Noel K. Torgerson for Defendants and Respondents.

I

INTRODUCTION

This action arises from a traffic collision at around midnight, on the Interstate 10

highway (I-10).  One of Knight Transportation, Inc.'s tractor-trailer (big rig) trucks

1

rearended a white pickup truck plaintiff Conrado Soto (Soto) was towing in the slow lane, up a hill. Soto appeals from judgment entered following nonsuit in favor of defendants Knight Transportation, Inc. and its driver, Felipe Noriega (collectively, Knight). Soto contends the trial court erred in precluding his experts, including treating physicians, from testifying, resulting in nonsuit.

We conclude the trial court did not abuse its discretion in excluding Soto's experts from testifying on the ground Soto failed to serve a timely designation of expert witnesses. Although the trial court erred in assuming Soto's treating physicians were barred from providing nonexpert percipient witness testimony, such error was harmless. The judgment is therefore affirmed.

II

FACTUAL AND PROCEDURAL BACKGROUND

A little after midnight, on September 5, 2008, Soto was involved in a motor vehicle accident on the I-10, in the number four lane. At the time, Soto was driving a black Toyota pickup truck, which was towing a white pickup truck up a long uphill grade. The bed of the black pickup was fully laden with auto parts, tools, a walker, and crutches.

In June 2009, Soto filed a lawsuit against Knight, alleging Soto suffered personal injuries and property damages caused by the truck accident. During a bench trial in April 2012, Officer Maciborski testified he reported to the accident scene shortly after the accident. He observed that Soto's two pickup trucks had a "jury-rigged" system of "taillights that Mr. Soto had run from the taillight sections of the black pickup truck over

2

the cab of the white pickup truck and somehow was connected to the tail of the white pickup truck lights." It was disputed whether the taillight system was working at the time of the collision. The driver of the big rig indicated he did not observe any taillights.

Officer Maciborski testified that he determined from his investigation, which included interviewing Soto in Spanish, that the accident occurred in the number four lane, when the big rig rear-ended the white pickup, causing both pickup trucks to spin out of control. There was a passenger in the front seat of the pickup truck. The passenger was not interviewed and did not testify at the trial. Soto told Maciborski his black pickup truck was travelling at approximately 50 miles per hour, towing the white pickup. The driver of the big rig said he was traveling about 55 miles per hour.

Maciborski testified he asked Soto in Spanish if he was injured and whether he had any automobile liability insurance. Soto told Maciborski he was not injured and had no complaints of pain. Maciborski stated in his accident report that no parties were injured. Soto did not produce any evidence of automobile liability insurance. Maciborski did not cite anyone involved in the accident for any violations or wrongdoing in the accident. Shortly before trial, it was determined Soto had no automobile liability insurance and therefore could not recover any general or noneconomic damages. He could only recover his medical expenses.

Soto testified that, before the truck accident, he was fine. He had no pain, problems, or difficulty with his right hip or leg, and was able to run without any limitations or restrictions. About two days after the accident, he started feeling pain in his neck, back, waist, low back, shoulders, and right hip. The pain got progressively

3

worse. Soto believed his right hip had been injured in the truck accident. Four days after the accident, an orthopedic surgeon recommended surgery. A few months later, Soto went to another orthopedic surgeon who also recommended surgery. Dr. Penenberg performed Soto's hip surgery at Cedars-Sinai Hospital in May 2009. Soto had a second surgery at Olive View Medical Center to drain fluid from his abdomen.

Soto further testified that the day after the accident, a stranger named "Carlos" contacted Soto and said he represented attorney Eric Douglas Johnson and persuaded Soto to sign an agreement retaining Johnson as Soto's attorney. Carlos drove Soto to his doctor appointments and interpreted for Soto. Carlos selected Soto's treating physicians. After Soto was released from the hospital, he stayed with his nephew. Healthcare workers cared for Soto during the day. Soto used a wheelchair for about a month and then used crutches. Soto claimed that, after the truck accident, he was disabled. He had to use a cane every day, whenever he walked.

After all of Soto's available witnesses testified, Soto's attorney, George Mgdesyan, requested the trial court to continue the trial to allow an additional third party witness, Mr. Alvarado, to testify. Because the witness had not been subpoenaed and was not available, the trial court denied a continuance. Mgdesyan moved for a mistrial on the ground the trial court had precluded Soto from presenting crucial witnesses, including his experts and treating physicians. The trial court continued the matter and permitted Mgdesyan to submit supplemental briefing on the issue of excluding testimony of treating physicians.

4

After reviewing the parties' written briefs and cited case law, and hearing oral argument, the court ruled that Soto's treating physicians could not testify as either experts or laywitnesses because Soto had not timely served an expert designation. The trial court denied Soto's motion for mistrial and granted Knight's motion for nonsuit under Code of Civil Procedure section 581, subdivision (c). [1] The trial court thereafter entered judgment in favor of Knight and against Soto.

## III

## EXCLUSION OF EXPERT WITNESS TESTIMONY

Soto contends the trial court erred in preventing Soto from introducing any expert witness testimony at trial. We conclude the trial court did not abuse its discretion by denying a continuance of trial to allow Soto's experts to be deposed, denying Soto's motion to submit a tardy expert designation, or granting Knight's motion in limine to exclude Soto's experts.

*A. Procedural Background*

In February 2012, Knight served a request for exchange of expert witnesses. The parties' expert designations were due on March 1, 2012. Knight timely served its expert designation.

In March 2012, Soto served notices of taking depositions of Knight's experts. On April 2, 2012, Knight objected to the deposition notices on the grounds they were late and sent to Knight's attorney's wrong address on Von Karman Avenue, which had

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

5

changed in October 2011. Knight's attorney reminded Soto's attorney of his new address on MacArthur Boulevard.

On April 10, 2012, Knight served motions in limine, which included motion in limine No. 2, seeking to exclude testimony of any health care professional or other expert provided on behalf of Soto, on the ground Soto had not served an expert designation. It was not until a discovery motion hearing on April 19, 2012, the day before trial, that Soto's attorney advised the court and Knight's attorney that a designation had been served. Knight's attorney, Scott L. Ghormley, advised the court he had not received the expert designation and requested a copy faxed to his office.

On April 19, 2012, after the discovery hearing, Ghormley received Soto's faxed expert designation. Attached to the expert designation was a proof of service, which stated the document was sent by mail on March 1, 2012, to Ghormley's office at the new MacArthur address. The proof of service for the expert designation was signed by the same person who signed the April 2012 proof of service for the deposition notices. Included with the faxed expert designation was a photocopy of an envelope addressed to Ghormley, containing a metered postmark dated March 1, 2012, showing $8.95 in postage, which was far in excess of the $2.30 postage amount required.

On April 20, 2012, when the parties appeared in court to answer ready for trial, Ghormley advised the trial judge that Soto had not provided a timely expert designation. Attorney Robert Bazikyan, appearing on behalf of Soto, argued Soto had served a timely expert designation, as established by the expert designation proof of service and copy of the envelope. Ghormley argued Soto delayed providing his expert designation until April

6

19, 2012. Therefore it was untimely. The trial court stated that the judge trying the case should hear the motion to exclude Soto's witnesses.

The case was assigned to Judge Trask for trial. Judge Trask heard Knight's motion to exclude Soto's expert witnesses that same day, April 20, 2012. During the hearing, it was conceded Soto was not entitled to general damages because Soto did not have automobile liability insurance at the time of the truck accident and therefore the bench trial would be limited to Soto's medical damages claim. Ghormley advised the court he did not receive Soto's expert designation until April 19, 2012, and therefore Soto's experts should be excluded. Ghormley noted that Soto's attorneys' failure to serve a timely expert designation was consistent with their pattern of behavior of failing to serve and file documents or filing them late. In opposition, Bazikyan argued there was no evidence refuting that Soto's attorneys timely served an expert designation. Bazikyan further agreed to produce Soto's experts for deposition.

The trial court noted that Soto's attorneys' history of dilatory, noncompliant conduct was inconsistent with a finding of timely exchange of expert witness designations. Soto's attorneys did not even respond to Knight's April 10, 2012 motion to exclude Soto's experts. The court tentatively ordered Soto's experts precluded from testifying and continued the hearing to allow additional briefing on the issue.

On April 23, 2012, Soto filed a motion to submit a tardy expert designation, to be heard on April 23, along with Knight's motion in limine to exclude Soto's experts. Also on April 23, 2012, Knight filed a supplemental brief in support of Knight's motion in limine to exclude expert testimony. Knight asserted that a reasonable inference could be

7

made that Soto's attorney did not timely serve a designation of expert witnesses and, therefore, Soto was precluded from introducing retained expert testimony, as well as testimony by nonretained treating physicians. Soto filed opposition to Knight's motion to exclude Soto's experts. Soto argued his attorney's secretary, Elizabeth Hatamian, mailed the expert designation on March 1, 2012, as reflected by the proof of service and copy of the envelope postmarked March 1, 2012.

During the motion hearing on April 23, 2012, Mgdesyan explained that he would be trying the case and had hired Bazikyan to do the discovery, after his law partner left his firm. Mgdesyan said he was unaware of all the discovery problems Bazikyan had caused. Mgdesyan said he did not respond to Knight's motion in limine because he was in New York on a federal matter during the week his office received Knight's motion, and did not return until April 18, 2012.

Mgdesyan apologized for all the problems in the case, requested the court not to exclude his experts, and requested a 30- to 45-day continuance to allow his experts to be deposed. Ghormley objected and argued Soto was not entitled to relief under section 473. Ghormley further argued that the totality of the circumstances indicated that Soto's attorneys did not, in fact, timely mail an expert designation on March 1, 2012.

The trial court granted Knight's motion to exclude Soto's experts and denied Soto's motion to submit tardy experts. The court reasoned: "[I]n looking, again, at the totality of the circumstances, the history of noncompliance with court's orders, the presumption that it was received has been rebutted. It's just one excuse after another that in the end does not add up to receipt by the defense of the designation of experts. [¶] . . .

8

[W]here you received a motion in limine stating that they are requesting to exclude any expert testimony for failing to designate, lack of a response is the equivalent of an admission . . . ." The court added, "You [Mgdesyan] are the lead attorney on this case. You are responsible for this case. And this case has had a series of significant missteps, to be kind, failing to comply with court orders, failing to comply with the court rules. . . . [¶] You know, it's not just about plaintiff. There's a defendant here that has gone to great expense, length of time, and preparation to be ready for trial to have their experts. It's very, very costly for defense to prepare for trial. . . . So I have to consider both sides of the table, not just you and your client, but what about the prejudice to the defendant? It's significant."

Mgdesyan responded that Soto should not be penalized for his attorneys' neglect or wrongdoing and therefore should be granted relief under section 473. The trial court requested the parties to meet and confer on the matter while the court briefly took the matter under submission. After the recess, Mgdesyan informed the court he had offered to pay for all of Knight's expert deposition costs. Mgdesyan also requested the court to allow him to file a section 473 motion and to brief the issue of setting aside waiver of a jury. Mgdesyan conceded "my office messed up. I messed up." Mgdesyan argued that, nevertheless, his client's case should not be jeopardized, since Knight's prejudice was minimal compared to the prejudice his client would suffer if the court excluded Soto's experts. The trial court disagreed and again stated it was granting Knight's motion to exclude Soto's experts and denying Soto's motion to submit tardy experts.

9

*B. Applicable Law*

"The statutes governing expert witness discovery are part of the Civil Discovery Act (§ 2016.010 et seq.). The purposes of the discovery statutes are 'to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise.' [Citation.]" (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.) "[T]he need for pretrial discovery is greater with respect to expert witnesses than ordinary fact witnesses because the opponent must prepare to cope with the expert's specialized knowledge. [Citation.] The Legislature responded to this need by enacting detailed procedures for discovery pertaining to expert witnesses. (See § 2034.210 et. seq.)" (*Id.* at p. 951.)

One such statute, section 2034.210, provides in relevant part: "After the setting of the initial trial date for the action, any party may obtain discovery by demanding that all parties simultaneously exchange information concerning each other's expert trial witnesses to the following extent: [¶] (a) Any party may demand a mutual and simultaneous exchange by all parties of a list containing the name and address of any natural person, including one who is a party, whose oral or deposition testimony in the form of an expert opinion any party expects to offer in evidence at the trial."

Section 2034.260, subdivision (a), provides in relevant part: "All parties who have appeared in the action shall exchange information concerning expert witnesses in writing on or before the date of exchange specified in the demand. The exchange of information may occur at a meeting of the attorneys for the parties involved or by a

10

mailing on or before the date of exchange." Section 2034.300, which is key in the instant case, provides that, with certain exceptions, "on objection of any party who has made a complete and timely compliance with Section 2034.260, the trial court *shall* exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following:  [¶]  (a) List that witness as an expert under Section 2034.260.  [¶]  (b) Submit an expert witness declaration.  [¶]  (c) Produce reports and writings of expert witnesses under Section 2034.270.  [¶]  (d) Make that expert available for a deposition under Article 3 (commencing with Section 2034.410)." (Italics added.)

Section 2034.710 provides the following exception to section 2034.300's rule of mandatory exclusion of expert witness testimony:  "(a) On motion of any party who has failed to submit expert witness information on the date specified in a demand for that exchange, the court may grant leave to submit that information on a later date.  [¶]  (b) A motion under subdivision (a) shall be made a sufficient time in advance of the time limit for the completion of discovery . . . to permit the deposition of any expert to whom the motion relates to be taken within that time limit.  Under exceptional circumstances, the court may permit the motion to be made at a later time."  Section 2034.720 further provides:  "The court *shall* grant leave to submit tardy expert witness information *only* if *all* of the following conditions are satisfied:  [¶]  (a) The court has taken into account the extent to which the opposing party has relied on the absence of a list of expert witnesses. [¶]  (b) The court has determined that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits.  [¶]  (c) The court

11

has determined that the moving party did all of the following: [¶] (1) Failed to submit the information as the result of mistake, inadvertence, surprise, or excusable neglect.[**2**] [¶] (2) Sought leave to submit the information promptly after learning of the mistake, inadvertence, surprise, or excusable neglect. [¶] (3) Promptly thereafter served a copy of the proposed expert witness information described in Section 2034.260 on all other parties who have appeared in the action." (Italics added.)

Here, the trial court found that Soto failed to serve a timely expert designation, there was no reasonable mistake or excusable neglect, and Soto failed to promptly rectify the problem by immediately seeking leave to submit an expert designation.

*C. Discussion*

Soto presented the following evidence to establish that his attorneys timely served an expert designation on March 1, 2012:

(1) A copy of Soto's expert designation, faxed to and received by Ghormley on April 19, 2012;

(2) a proof of service attached to Soto's expert designation, stating the expert designation was served on March 1, 2012, executed by Mgdesyan's secretary, Elizabeth Hatamian;

(3) a copy of the envelope addressed to Ghormley, allegedly containing Soto's mailed expert designation, showing a postmark date of March 1, 2012;

---

**2** Because the expert witness statute provides its own procedures for relief from exclusion, relief cannot be obtained under section 473, subdivision (b), on the ground of "mistake, inadvertence, surprise, or excusable neglect," including the provision for mandatory relief upon filing an attorney affidavit of fault. (§ 473, subd. (b), *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 483.)

(4) Mgdesyan's declaration stating that on March 1, 2012, he prepared Soto's expert designation and handed it to Hatamian to mail on March 1, 2012;

(5) Hatamian's declaration stating that on March 1, 2012, she prepared and signed the proof of service attached to Soto's expert witness designation; she mailed the expert designation to Ghormley on March 1, 2012; she accidentally applied the incorrect postage on the envelope; after mailing the expert designation, she subsequently used Ghormley's incorrect address on expert deposition notices because she relied on letterhead Ghormley used on a March 30, 2012 letter; and, as a common practice, her office photocopied envelopes, along with postmarks, when sending important documents to opposing counsel.

Section 1013, subdivision (a), provides that the service of a legal notice or other paper by mail is "complete at the time of the deposit." Further, the party who complies with the statutory requirements of legal service by mail has no burden to show that the other party actually received the notice. Rather, the person to whom the notice is sent by mail incurs the risk that the mail might fail. (*Silver v. McNamee* (1999) 69 Cal.App.4th 269, 283; *Sharp v. Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 360.) Where one party complies with the statutory requirements of legal service by mail, a court is entitled to presume that the document was served, absent a sufficient factual showing to overcome the presumption. (*Forslund v. Forslund* (1964) 225 Cal.App.2d 476.) It is thus the addressee's burden to show that it did not receive notice. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 973.)

Here, there was sufficient evidence to create a presumption that Soto's expert

13

designation was timely served on March 1, 2012. Knight thus had the burden of refuting the presumption. Whether the presumption of receipt has been rebutted is a question of fact generally resolved in the trial court. (See, e.g., *Glasser v. Glasser* (1998) 64 Cal.App.4th 1004, 1010-1011.) We conclude Knight met its burden of rebuttal by providing substantial evidence that Soto's attorney did not timely serve an expert designation on March 1, 2012. Such evidence rebutting the presumption included evidence of the following facts:

(1) Knight's attorney, Ghormley, did not receive Soto's expert designation until it was faxed on April 19, 2012, the day before trial was to begin.

(2) The expert designation proof of service, signed by Hatamian, stated the document was sent on March 1, 2012, to Ghormley's correct, current address, whereas on March 26, 2012, Hatamian sent notices of taking depositions to Ghormley's previous address. Knight's attorney notified Soto's attorney on March 30, 2012, of the new correct address, which was the address on Soto's expert designation, thus indicating Hatamian prepared the expert designation proof of service after being reminded of Ghormley's change of address.

(3) Mgdesyan provided a copy of the envelope allegedly containing Soto's expert designation, which had postage far exceeding the amount needed for mailing the expert designation.

(4) Photocopying the envelope used to send the expert designation is not common practice.

(5) Soto's attorneys had a history throughout the case of failing to serve and file

14

documents or filing them late and violating court rules, resulting in evidentiary sanctions.

(6) Soto's attorneys failed to respond immediately to Knight's motion in limine to exclude Soto's experts. The motion was served on April 10, 2012. Soto's attorneys did not claim Soto had timely served an expert designation until April 19, 2012, and Mgdesyan did not file a motion to submit a tardy expert designation until April 23, 2012, three days after trial was scheduled to begin.

In refuting Knight's contention Soto's expert designation was not timely served on March 1, 2012, Soto argued there was evidence Hatamian mailed Soto's expert designation on March 1, 2012, to Ghormley's correct address; Hatamian inadvertently used extra postage; the expert designation was lost in the mail; and later, she got confused as to Ghormley's current office address because she had recently received a letter from him on his old letterhead, and as a result served deposition notices to his former address. The trial court rejected Soto's arguments and found that Soto's expert designation was not timely served on March 1, 2012. Since the outcome of conflicting evidentiary inferences is most appropriately determined in the trial court, we will not on this record disturb the trial court's factual determination that Soto's expert designation was not timely served. (See *Idaho Maryland Mines Corp. v. Industrial Accident Commission* (1959) 174 Cal.App.2d 693, 695-696.)

Citing *Plunkett v. Spaulding* (1997) 52 Cal.App.4th 114 (*Plunkett*) (overruled in *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 40 (*Schreiber*)), Soto argues that the trial court abused its discretion in denying his motion to submit a tardy designation and granting Knight's motion in limine to exclude Soto's experts. Soto asserts the trial court

15

failed to take into consideration that Soto offered to make his experts immediately available for deposition and pay for Knight's cost of deposing them. Furthermore, any inconvenience to Knight or delay in trying the case, arising from allowing Knight to depose Soto's experts, was far outweighed by prejudice to Soto in precluding his experts from testifying.

In *Plunkett* the trial court excluded two of the plaintiff's treating physicians from testifying as experts because the plaintiff failed to provide the defendant with expert witness declarations. The trial court found that the mistake did not constitute an exceptional circumstance warranting relief during the trial. (*Plunkett, supra,* 52 Cal.App.4th at p. 136.) On appeal, the *Plunkett* court reversed, holding that the trial court erred in not granting the plaintiff's motion to submit tardy expert witness declarations. (*Id.* at p. 137.)

*Plunkett* is distinguishable in that in *Plunkett* the plaintiff served an expert designation but failed to provide expert declarations for treating physicians, whereas the instant case concerns the failure to serve a timely expert designation. (*Plunkett, supra,* 52 Cal.App.4th at pp. 120-121.) In addition, in *Plunkett*, the error was due to the plaintiff's attorney making a reasonable mistake of law, in which the attorney mistakenly believed expert witness declarations were not required for treating physicians who were expected to testify on the standard of care. This was an uncertain area of law, which the California Supreme Court later clarified when it overruled *Plunkett* in *Schreiber , supra,* 22 Cal.4th 31, holding that a plaintiff's treating physicians are normally not experts, retained within the meaning of the statutes requiring submission of an expert witness declaration. In the

16

instant case, there was sufficient evidence to support the trial court's finding Soto had not demonstrated reasonable mistake or excusable neglect in failing to serve a timely expert designation. (*Id.* at pp. 33, 39-40.)

Furthermore, unlike in the instant case, in *Plunkett* the plaintiff promptly filed a motion to submit tardy expert declarations. The motion was filed the day after counsel in *Plunkett* learned of his mistaken interpretation of the expert witness discovery statute. (*Plunkett, supra,* 52 Cal.App.4th at p. 135.) In *Plunkett*, there was minimal prejudice to the defendant from the tardy submission of the declarations because the defendant already had anticipated the proposed testimony and had acted to counter it by other expert testimony. (*Id.* at p. 136.) The *Plunkett* court concluded the plaintiff's attorney had made an honest, reasonable, good faith mistake in not providing the expert declarations, and immediately upon learning of the mistake, promptly sought leave to submit a tardy expert witness declaration and offered to make the expert immediately available for deposition. (*Id.* at p. 137.)

Here, there was substantial evidence Soto did not timely serve an expert designation, Knight was prejudiced in that it prepared its defense assuming no expert witnesses would testify, and Soto did not promptly file a motion to submit a tardy expert designation or immediately object to Knight's motion to exclude Soto's experts. Soto's motion to provide a tardy expert designation was filed over 10 days after receiving Knight's motion to exclude Soto's experts, and three days after the trial was scheduled to begin. "Whether to grant relief from the failure to timely submit an expert witness declaration is addressed to the sound discretion of the trial court and will not be disturbed

17

on appeal absent a showing of manifest abuse of that discretion." (*Plunkett, supra,* 52 Cal.App.4th at p. 135.) Here, Soto has not shown a manifest abuse of discretion in denying Soto's motion to submit tardy designation and granting Knight's motion in limine to exclude Soto's experts. (*Ibid.*)

IV

EXCLUSION OF TREATING PHYSICIANS' TESTIMONY

Soto alternatively contends the trial court committed reversible error by preventing his treating physicians from presenting nonexpert, percipient testimony. Soto does not dispute that physicians, who are nondisclosed as experts, cannot provide opinion testimony. On appeal, Soto acknowledges that his treating physicians, as nonexperts, could not give opinion testimony. Soto argues that his treating physicians, however, should have been permitted to testify as to their observations and treatment, and thus testify as a percipient, nonexpert witness. Soto asserts that based on such testimony, the court could have inferred that his injuries were caused by the accident and, therefore, expert testimony was not necessary to prevail on his medical damages claim.

A party must disclose a treating physician's identity in its expert designation if it intends to offer the physician's expert opinion at trial. (*Schreiber, supra,* 22 Cal.4th at pp. 33-35; § 2034.210, subd. (a).) Here, the trial court found that Soto failed to serve a timely expert designation. Therefore his treating physicians were precluded from providing any expert testimony, such as on causation. The issue here is whether the trial court erred in also precluding Soto's treating physicians from testifying to nonopinion evidence, such as testimony of the physicians' observations of Soto's injuries, diagnoses,

18

prognoses, treatment of Soto, and bills for treatment.

The court in *Kalaba v. Gray* (2002) 95 Cal.App.4th 1416 (*Kalaba*) explained there are two types of physician experts, retained and nonretained experts that must be listed in an expert designation in order to provide expert opinion testimony at trial: "'To the extent a physician is retained "for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action," his identity and opinions are generally privileged unless he testifies. (§ 2034, subd. (a)(2).) Should the physician testify, an expert witness declaration is required. On the other hand, to the extent a physician acquires personal knowledge of the relevant facts independently of the litigation, his identity and opinions based on those facts are not privileged in litigation presenting "an issue concerning the condition of the patient." [Citations.] For such a witness, *no expert declaration is required*, and he may testify as to any opinions formed on the basis of facts independently acquired and informed by his training, skill, and experience. This may well include opinions regarding causation and standard of care because such issues are inherent in a physician's work.'" (*Id.* at p. 1422, quoting *Schreiber, supra,* 22 Cal.4th at p. 39.)

Soto's treating physicians were the second type of witness, because they acquired personal knowledge of the relevant facts independently of the litigation. Therefore their identity and opinions based on those facts were not privileged in litigation. (*Kalaba, supra,* 95 Cal.App.4th at p. 1422; *Schreiber, supra,* 22 Cal.4th at p. 39.) Soto, however, was required to provide a timely expert designation listing his treating physicians as nonretained experts in order for his treating physicians to testify as to their opinions.

19

After the trial court ruled that Soto had failed to provide a timely expert designation, his attorney argued that Soto's treating physicians could nevertheless testify as nonexperts, as to their observations. In determining whether such evidence was admissible, the trial court failed to differentiate between permissible nonexpert testimony and inadmissible expert opinion evidence barred by Soto's failure to provide a timely expert designation. The trial court simply concluded that all testimony by Soto's treating physicians, both expert opinion and nonexpert testimony, was precluded under section 2034.300.

A. *Expert Opinion Testimony*

The court in *Brun v. Bailey* (1994) 27 Cal.App.4th 641, 652 (*Brun*) (superseded by amended statute on other grounds) concluded that, under the common law definition of opinion evidence, ". . . a physician or other treating health care practitioner, who testifies regarding his or her knowledge of the patient's treatment, diagnosis or prognosis, does not express an expert opinion." (*Id.* at p. 654.) In addressing the issue of whether a treating physician was entitled to an expert witness fee, the *Brun* court noted that, "the Legislature, in 1968, adopted Government Code former section 68092.5, which provided in pertinent part for payment of an expert witness fee to any person called to testify in court or in the taking of a deposition '. . . solely as to any *expert opinion* which he holds upon the basis of his special knowledge, skill, experience, training or education, and who is qualified as an expert witness . . . .'" (*Id.* at pp. 652-653; italics added.)

Evidence Code section 801 provides that, "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an

20

expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

The Law Revision Commission Comments for Evidence Code, section 801 state that, "[a]lthough courts have not always used the same language, the decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*People v. Cole* (1956) 47 Cal.2d 99, 103.)

In differentiating between treating physician expert opinion and percipient witness factual testimony, the *Brun* court explained: "Questions regarding the physician's knowledge of specific facts as to the patient's condition, including past treatments provided and past diagnoses and prognoses rendered, are factual questions. Questions regarding the expert's opinion as to the patient's prognosis at the time of the deposition, or regarding the reasons for the treatments, diagnoses, or prognoses provided in the past, call for opinion." (*Brun, supra,* 27 Cal.App.4th at p. 654.) *Brun* concluded that former section 2034, subdivision (i)(2) [recodified as section 2034.430], did not "alter the common law rule that a physician or other treating health care practitioner, who testifies

21

regarding his or her knowledge of the patient's treatment, diagnosis or prognosis, does not express an expert opinion." (*Brun,* at p. 654.) Testimony, however, explaining the reason a physician conducted his examination in a specific way constitutes opinion testimony. (*Id.* at p. 657.)

Here, it is undisputed testimony by Soto's treating physicians regarding causation of Soto's injuries constitutes opinion testimony and therefore was correctly excluded as expert opinion testimony under section 2034.300. Soto concedes this in his appellate reply brief. However, factual testimony as to Soto's treating physicians' observations, treatment, diagnoses, prognoses, and billing was not inadmissible expert opinion testimony. Therefore, as to the treating physicians' nonexpert, factual testimony, the trial court erred in assuming it was barred simply because Soto had not provided a timely expert designation listing the treating physicians as expert witnesses.

*B. Admissible Nonexpert Testimony by Treating Physicians*

There appears to be very little, if any, California case law addressing whether a treating physician can testify as a nonexpert, percipient witness. Soto cites *County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446, 1455-1457 (*County of Los Angeles*), *Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1682-1684 (*Province*) (overruled on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41), and *Jutzi v. County of Los Angeles* (1987) 196 Cal.App.3d 637, 653 (*Jutzi*) for the proposition the trial court erred in barring his treating physicians from presenting nonexpert, percipient testimony. *County of Los Angeles* is not on point. It concerns testimony by defendant physicians, sued in a medical malpractice action. The

22

court in *County of Los Angeles,* at pp. 1455-1456, stated that "Questions to the defendant physicians about their impressions and reasons for their action or lack of action at the time the medical procedure was performed are, of course, entirely appropriate. Such questions were asked without objection by defense counsel. But . . . questions about after-the-fact opinions and impressions of the physicians stand in quite another light." The defendant physicians' testimony in *County of Los Angeles* concerned their own conduct. Such testimony did not constitute testimony by a treating physician in a personal injury action, regarding the plaintiff's treatment and injuries.

In *Jutzi, supra,* 196 Cal.App.3d at page 653, also a medical malpractice case, the court held the trial court did not err in allowing a defense medical witness, who was not designated as an expert witness, to testify concerning the hospital's policy of allowing the plaintiff's type of injury to be treated by an emergency room physician. The *Jutzi* court held that former section 2037 [now sections 2034.210 and 2034.300], which barred nondesignated experts from testifying at trial, did not apply "because Dr. Grigsby did not testify as an expert witness. Instead, he testified concerning his *personal* knowledge of the written policy of that hospital in 1976 allowing emergency room physicians to treat fractures of the type in question." (*Jutzi, supra,* 196 Cal.App.3d at p. 653.) While *Jutzi* did not concern a treating physician testifying as a nonexpert, *Jutzi* supports the proposition that a physician can testify as a nonexpert to facts within the physician's personal knowledge.

In *Province, supra,* 20 Cal.App.4th at page 1684, a medical malpractice action, the court held that the trial court committed reversible error by allowing a treating physician,

23

who was not properly designated as an expert, to provide expert opinion testimony. In dicta, the trial court stated that, on retrial, if the treating physician was not designated as an expert and produced for deposition in compliance with the Civil Discovery Act of 1986 (Code Civ. Proc., § 2016 et seq.), "[t]he trial court must limit his testimony to percipient observations . . . ." (*Ibid.*) In *Province*, the court merely assumed, without discussion, that a treating physician may testify to percipient observations as a nonexpert if not designated as an expert.

There is, however, persuasive federal case law that is more on point. In *Brooks v. Union Pac. R.R.* (8th Cir. 2010) 620 F.3d 896, 900, a personal injury case, the federal eighth circuit Court of Appeals held that the plaintiff's treating physician could testify as a laywitness when describing the plaintiff's medical condition. (See also *Davoll v. Webb* (10th Cir. 1999) 194 F.3d 1116, 1138-1139 (*Davoll*).) The *Brooks* court also held that the physician's affidavit was inadmissible because it, not only merely explained the plaintiff's condition, but also introduced opinion as to the cause of the plaintiff's injury. The *Brooks* court concluded that such expert opinion evidence was properly excluded because the plaintiff failed to comply with Federal Rules of Civil Procedure Rule 26(a)(2)[3] requiring an expert designation.

Likewise, in *Davoll,* a disability discrimination case, the tenth Circuit Court of Appeals held that the plaintiff's undisclosed treating physician could testify as a laywitness when describing a medical condition. (*Davoll, supra,* 194 F.3d at pp. 1138-

---

[3] Undesignated rule references are to the Federal Rules of Civil Procedure unless otherwise indicated.

24

1139.) The *Davoll* court stated: "A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party. [Citations.] A treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony. [Citations.]" (*Id.* at p. 1138.)

We recognize *Davoll* further states that opinion testimony based on percipient facts is also admissible, relying in part on *Richardson*, which was superseded by federal statute. As explained in *Musser v. Gentiva Health Services* (7th Cir. 2004) 356 F.3d 751, 756, "*Richardson* was interpreting the pre-1993 Amendment Rule 26. *Richardson* relied on language in a case, *Patel v. Gayes,* 984 F.2d 214, 218 (7th Cir. 1993), also decided before the 1993 Amendment. More importantly, the text of the current Rule 26(a)(2)(A) references the Federal Rules of Evidence to determine what must be disclosed as expert testimony. Expert testimony is designated as such by its reliance on 'scientific, technical, or other specialized knowledge.' Fed.R.Evid. 702. Occurrence witnesses, including those providing 'lay *opinions*,' cannot provide opinions 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' Fed.R.Evid. 701. Thus, a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of *opinions* based on 'scientific, technical, or other specialized knowledge' regardless of whether those *opinions* were formed during the scope of interaction with a party prior to litigation." (*Musser,* at p. 757, fn. 2; italics added.) The court in *Musser* noted "that treating physicians are not exempt from the requirements of Federal Rules of Evidence 702 and 703 because 'we do not distinguish the treating

physician from other experts when the treating physician is offering expert testimony regarding causation')." (*Ibid.*, citing *O'Conner v. Commonwealth Edison Co.* (7th Cir. 1994) 13 F.3d 1090, 1105, fn. 14.)

Based on limited California case law and persuasive federal decisions, we conclude a treating physician can testify as a percipient, nonexpert witness but only as to the treating physician's observations within the physician's personal knowledge. Any opinion testimony derived from those observations or personally known facts is inadmissible. In the instant case, the trial court therefore erred in barring Soto's treating physicians from testifying as nonexpert, percipient witnesses base on Soto not properly designated his treating physicians as experts.

## C. Harmless Error

Although the trial court erred in concluding Soto's treating physicians could not testify because Soto did not serve a timely expert designation, the error was harmless error. Soto has not established he was prejudiced, since nonsuit was inevitable. Reversal is unwarranted absent prejudicial error. (Cal. Const., art. VI § 13; Code Civ. Proc., § 475 ["No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial . . . and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed."]); *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 107.)

Even if Soto's treating physicians were permitted to testify as nonexperts regarding facts, such as their observations, treatment provided, diagnoses, prognoses, and

26

billing facts, the outcome would have been the same; nonsuit would likely have been granted. "'A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit [the trier of fact] to find in his favor. [Citation.] "In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor.'" [Citation.] A mere "scintilla of evidence" does not create a conflict . . .; "there must be *substantial* evidence to create the necessary conflict." [Citation.]'" (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 444.)

In the instant case, Soto could not prevail on his medical damages claim without expert medical testimony supporting his contention his hip injury was caused by or exacerbated by the truck accident. Although Soto testified his hip was fine right before the truck accident and he suffered hip pain afterwards, resulting in surgery, there was expert evidence refuting this. Where it was undisputed Soto had previously injured his right hip, a determination of whether Soto's alleged hip injury was preexisting or caused entirely or in part by the truck accident, was beyond common knowledge and thus required medical expertise. As a laywitness, Soto therefore was unable to prove his hip condition was caused by the accident and not preexisting.

Soto argues that his testimony established he was injured during the truck accident

and, even though there was defense expert evidence refuting this, the trial court could reject Knight's expert opinion evidence and find that Soto's testimony sufficiently established his injuries were caused by the truck accident. Because the instant case does not present any issues of professional negligence or medical malpractice, the trier of fact was not required to accept as conclusive uncontradicted testimony of Knight's experts. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632-633.) "Instead, the general rule applies. Under this rule, . . . the opinion of any expert witness 'is only as good as the facts and reasons on which it is based. . . .' (BAJI No. 2.40.) If the jury finds that the party offering expert testimony has failed to prove any foundational fact, or that some fact on which the expert's opinion is based has been disproved by the opposing party, the jury is required to consider that in evaluating the expert testimony. Although a jury may not arbitrarily or unreasonably disregard the testimony of an expert, it is not bound by the expert's opinion. Instead, it must give to each opinion the weight which it finds that opinion deserves. So long as it does not do so arbitrarily, a jury may entirely reject the testimony of a plaintiff's expert, even where the defendant does not call any opposing expert and the expert testimony is not contradicted. . . .; *Beard v. David* (1960) 179 Cal.App.2d 175, 177-178 [testimony of plaintiff's expert was not conclusive, but was to be weighed by jury]; *Ortzman v. Van Der Waal* (1952) 114 Cal.App.2d 167, 170-172 [jury not bound to accept the opinions expressed by medical experts even where no opposing opinion is offered].)" (*Howard,* at p. 632.)

Nevertheless, here, Soto could not prevail on his medical damages claim without expert opinion evidence, since there was substantial evidence Soto's hip condition was

preexisting and Soto had the burden of proving causation. During the trial, Officer Maciborski testified Soto told him he was not injured and had no complaints of pain. Maciborski also stated in his accident report that no parties were injured, including Soto's front passenger. Soto, who speaks Spanish and requires an interpreter, testified he told Maciborski he was injured and that Maciborski did not speak to him in Spanish. However, Maciborski testified he is fluent in Spanish and interviewed Soto in Spanish. Soto also testified that 11 years before the trial, he had had a total hip replacement in Guatemala, in which the right femur head was replaced because of a slip-and-fall accident. During Soto's deposition, he testified he had had the hip replacement surgery in Guatemala City over 20 years before the truck accident. Soto also acknowledged that, at the time of the truck accident, there was a walker and crutches in the bed of his black pickup truck, but claimed he was fine right before the accident and the walker and crutches were in his truck because he planned to sell them in Guatemala.

There was also defense expert medical evidence that Soto's hip injury was preexisting and thus was not caused by the truck accident. Knight's defense radiologist concluded in his report that "Mr. Soto's imaging studies obtained prior to his surgery reveal significant abnormalities of his pre-existing right total hip arthroplasty and native right hip which are nearly certain to predate the accident by several years. No findings are identified which can be reasonably attributed to recent trauma."

Soto's own testimony was not sufficient to meet his burden of proving that his alleged injuries were caused in whole or in part by the truck accident. When medical services costs are claimed as damages, the plaintiff must show that the services were

29

attributable to the incident giving rise to liability, that they were necessary, and that the charges were reasonable. (*Dimmick v. Alvarez* (1961) 196 Cal.App.2d 211, 216.) When medical services may be attributable to more than one cause, the bill for such services may be admitted as evidence of damages only if there is evidence from which a fact finder can apportion the expense among the various causes. (*McAllister v. George* (1977) 73 Cal.App.3d 258, 264-265; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 73.) In the absence of expert opinion, Soto could not establish causation or apportionment, nor could he refute Knight's expert evidence establishing that Soto's hip injury was preexisting. The determination of whether Soto's injuries were caused by the truck accident was beyond common experience, and therefore Soto could not prevail on his medical damages claim. Nonexpert testimony by his treating physicians would not have made any difference in the outcome of his medical damages claim. Knight would have been entitled to nonsuit, since, as a matter of law, the evidence presented by plaintiff would have been insufficient to permit the trier of fact to find in his favor, even if the trial court had permitted Soto's treating physicians to provide nonexpert testimony. (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist., supra,* 88 Cal.App.4th at p. 444.)

In general, the question "[w]hether a defendant's conduct actually caused an injury is a question of fact [citation] that is ordinarily for the [trier of fact] [citation]." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252.) In certain cases in which "the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." (*Stephen v. Ford Motor Co.* (2005) 134 Cal.App.4th 1363, 1373.) For example, in cases involving complicated medical causation issues, the

30

standard of proof generally required is a reasonable medical probability based on competent expert testimony that the defendant's conduct contributed to the plaintiff's injury. (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 976, fn. 11.) When there are several possible causes for an injury, "[t]he law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402.) In those cases in which the issue of causation is beyond common lay experience, "causation must be founded upon expert testimony and cannot be inferred from the [trier of fact's] consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1385.)

In the instant case, plaintiff testified his hip injury was caused by the truck accident but was unable to present any expert testimony on the element of causation. Because there was expert medical evidence that plaintiff's hip injury was preexisting, the issue of causation was a complex medical issue, beyond the common knowledge of the trier of fact. Lay opinion on causation was therefore insufficient. There are a plethora of medical issues which required knowledge beyond that of a layperson to resolve, including whether plaintiff had a preexisting condition, such as a preexisting right hip condition from a slip and fall accident and surgery 10 years before the truck accident, avascular necrosis attributable to plaintiff's long-term smoking, alcoholism, and liver damage; whether plaintiff's inability to recover quickly or fully after the truck accident

31

was due to these preexisting conditions; whether plaintiff was 100 percent disabled because of the truck accident or in part due to his preexisting conditions and the deterioration of his left hip (his alleged truck accident injury was to his right hip); and whether plaintiff's post-truck accident medical damages were 100 percent attributable to the truck accident or should be apportioned between the truck accident and preexisting conditions. Under the particular facts in this case, plaintiff was required to present expert opinion testimony establishing, to a degree of reasonable medical probability, that the truck accident caused or contributed to his right hip injury. Since plaintiff was unable to present any expert opinion testimony on the element of causation or to establish his medical bills were reasonable and necessary, plaintiff could not prevail on his medical damages claim. Therefore excluding nonexpert testimony by plaintiff's treating physicians was harmless error.

## V

## DISPOSITION

The judgment is affirmed. Knight is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RICHLI
        Acting P. J.

MILLER
        J.

32